IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KALEB MORRIS, INDEPENDENT ADMINISTRATOR OF THE ESTATE OF VICTOR MORRIS,** | |
| **Plaintiff/Counter-Defendant,** | |
| v. | Case No. 3:20-cv-00344-SPM |
| **ARCH INSURANCE COMPANY,** | |
| **Defendant/Counter-Claimant.** | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of both Defendant's Motion for Summary Judgment (Doc. 38) and Plaintiff's Motion for Summary Judgment (Doc. 42). Defendant filed a memorandum in support of its motion (Doc. 39) and Plaintiff filed a joint memorandum and response to Defendant's motion (Doc. 43). Defendant additionally filed a response to Plaintiff's motion for summary judgment (Doc. 44).

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks to recover damages related to a March 15, 2018 fatal accident involving decedent Victor Morris and Rebecca Anderson, an Arkansas resident. The accident took place in Arkansas while decent Morris was driving a WW Transport truck. The WW Transport truck driven by Morris was licensed and registered in the state of Iowa at the time of the accident.

Plaintiff is seeking recovery from Defendant Arch Insurance Company based on Commercial Auto Policy No. ZACAT3332801 ("the Policy") issued to WW Transport

and in effect at the time of the accident (Doc. 16; Exh. #3). It is uncontested that WW Transport is an Iowa corporation (Docs. 39, 43) and the insurance broker—Cottingham & Butler Insurance Services, Inc.—is also an Iowa company (Docs. 21-1, 39, 39-2). The accident at issue in this matter took place in Arkansas (Doc. 16).

## APPLICABLE LAW AND LEGAL STANDARDS

Summary judgment is the moment in a lawsuit where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

## ANALYSIS

### I. Choice of Law

The primary point of disagreement between the parties centers around which

state's law applies to the Policy. Plaintiff seeks to impose Illinois' uninsured/underinsured ("UM/UIM") requirements on the Policy, whereas Defendant seeks to have Iowa (or in the alternative, Arkansas) law applied to the Policy. Plaintiff correctly asserts that when parties disagree about which law to apply in a diversity action and the contract contains no choice-of-law provision, district courts are obligated to "appl[y] the choice-of-law rules of the forum state to determine which state's substantive law applies. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009).

Prior to this case's removal, the forum state was Illinois. Illinois law focuses on a few key factors in determining which state law should apply to insurance contracts. "Absent an express choice of law, insurance policy provisions are generally 'governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract.'" *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 526-27 (Ill. 1995) (quoting *Hofeld v. Nationwide Life Insurance Co.*, 59 Ill. 2d 522, 528 (1975)). Defendant correctly points out that "virtually all of the relevant factors point to Iowa law . . ." including that both the primary insured and the broker were located in Iowa and that the performance and signing took place in Iowa.

Even if the Policy were to be interpreted under Illinois law, Plaintiff's argument that 215 ILCS 5/143a requires the Policy to provide UM/UIM coverage at higher limits must fail. Illinois courts have already addressed this statute and noted that it is limited to policies "renewed, delivered, or issued for delivery in [Illinois]" (as the plain

language of the statute dictates). *State Farm Mut. Auto Ins. Co. v. Burke*, 51 N.E.3d 1082, 1093 (Ill. App. Ct. 2016). Plaintiff's attempt to distinguish *Burke* due to the out-of-state coverage provision found in the Policy fails for reasons discussed in Section II below.

## II. Out-Of-State Coverage

Even if Iowa law applies to the Policy, Plaintiff has argued that the Policy's provision for out-of-state coverage mandates an application of Illinois UM/UIM coverage. The Policy contains an out-of-state coverage provision which provides that:

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limit specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing "motor carriers" of passengers or property.
(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used . . .

Plaintiff will find no additional coverage in this provision. This matter involves an automobile Policy delivered in Iowa and an automobile accident occurring in Arkansas. Had the accident actually *occurred* in Illinois, this provision might have more bearing on what UM/UIM provisions should be applied.

Plaintiff proffers *Dunlap v. Hartford Ins. Co. of Midwest*[1], as an example of a court using a very similar out-of-state provision to apply Louisiana UM/UIM requirements to a Michigan policy. Plaintiff fails to note a crucial difference between *Dunlap* and the present case: the accident in *Dunlap* actually occurred in Louisiana.

---

[1] 2004-0725 (La. App. 1 Cir. 3/24/05), 907 So. 2d 122 (2005)

Page 4 of 8

Plaintiff is not asking this Court to enforce the laws of the state in which the accident occurred (Arkansas), but is instead asking for an application of Illinois law because the vehicle was currently garaged in the state. *Dunlap* cuts directly against this type of application, and specifically notes that "Louisiana's UM law **can** be applied to foreign insurance policies in multistate cases **when the accident occurs in Louisiana** and involves a Louisiana resident." *Dunlap*, 907 So. 2d at 124 (emphasis added).

Taken as correct, Plaintiff's application of the out-of-state coverage provision would force an Iowa insurance policy to apply Illinois UM/UIM law to an accident taking place in Arkansas involving an underinsured Arkansas driver. The vehicle was being used in Arkansas at the time of the accident, not Illinois. The Supreme Court of Illinois has held that "[i]n applying the rules of interpretation, the words in the policy should be given their plain and ordinary meaning, and the court should not search for an ambiguity where there is none." *U.S. Fire Ins. Co. v. Schnakenberg*, 88 Ill.2d 1, 5 (Ill. 1981).

The plain meaning of the out-of-state provision would be to extend coverage when the vehicle is being used in another state. Here, that would certainly entail applying Arkansas mandated minimums to the Policy if it did not already meet or exceed those. Plaintiffs want this Court to go one step further and apply Illinois law to the policy because the vehicle was "garaged" in Illinois (Doc. 43). Relying on *Schultz v. Illinois Farmers Insurance Co.*[2], Plaintiff states that Illinois UM/UIM provisions

---

[2] 237 Ill. 2d 391, 930 NE 2d. 943 (Ill. 2010)

must apply. *Schultz*, however, involved a policy "renewed, delivered, or issued for delivery in Illinois," an incident occurring in Illinois, and dealt with a dissimilar question of who qualifies as an insured under UM/UIM provisions. *Schultz* provides no foundation to Plaintiff's insistence that Illinois UM/UIM statutes apply as opposed to Arkansas ones.[3]

This Court need not decide whether Arkansas law or Iowa law applies to the incident in question, as both result in the same outcome: no coverage for UM/UIM. Because the vehicle was being used in Arkansas at the time of the incident and the Policy already rose to or exceeded the statutory minimums as required by Arkansas law, the out-of-state provision does not give Plaintiff's access to Illinois' UM/UIM standards.

### III. Valid Waiver of the UM/UIM Coverage

Plaintiff attacks WW Transport's waiver of UM/UIM coverage as legally insufficient. Assuming that Illinois law applies to all of the UM/UIM waivers at issue in this case, Plaintiff's argument still fails. 215 ILCS 5/143a-2(1) requires that:

> [UM/UIM coverage must be] included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2) of this Section. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code.

Here, the Illinois UM/UIM Rejection Form ("Illinois Rejection Form") included clear

---

[3] Plaintiff also utilizes *Schultz* to attack "insurance step-down provisions" arguing that WW Transport provides different coverage based upon the potential insured. This is an incorrect application of *Schultz*. *Schultz* involved one policy that had different UM/UIM coverage depending on the identity of the driver. That is not the case here. WW Transport instead had *multiple insurance policies* that covered different types of vehicles used by the company.

language stating the various requirements under Illinois law related to UM/UIM coverage. It also notifies the insured of their right to opt for a lower limit than the general statutory requirement. This form briefly describes the coverage and advised WW Transport of its right to reject the coverage in excess of the $25,000 minimum required by law.

Plaintiff contends that Defendant and their Iowa broker were required to adequately explain to WW Transport "the options available" (Doc. 43). The Illinois Rejection Form did just this. Under current Illinois law, "[n]o longer is the insurer responsible to make an offer [of UM/UIM coverage], but rather it is the insured's duty to reduce the uninsured motorist coverage . . . it is the duty of the insurer to *explain* the coverage and nothing more." *DeGrand v. Motors Ins. Corp.*, 146 Ill. 2d 521, 533-34 (1992).

Furthermore, even if Defendants had failed to adequately explain the nature of UI/UIM coverage, such explanation is not necessary when the policy is "a 'renewal, reinstatement, reissuance, substitute, amend[ment], replacement or supplementary policy" *Burnett v. Safeco Ins. Co. of Illinois*, 227 Ill. App. 3d 167, 172 – 73 (1992) (quoting Ill. Rev. Stat. 1989, ch. 73, par. 755a-2(2).) Even when evaluated under Illinois law, the Illinois Rejection Form contained sufficient information to comply with the statutory requirements and provide a valid waiver of higher UM/UIM limits.

## CONCLUSION

For the foregoing reasons, Plaintiff Kaleb Morris' Motion for Summary Judgment is **DENIED** and Defendant Arch Insurance Company's Motion for Summary Judgment is **GRANTED**. Plaintiff's First Amended Complaint is

**DISMISSED**. Defendant's **COUNTERCLAIMS ONE**, **TWO**, and **THREE** are hereby **GRANTED** and **COUNTERCLAIMS FOUR** and **FIVE** are **DISMISSED** as **MOOT**. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close the case on the Court's docket.

    **IT IS SO ORDERED.**

    **DATED:    February 18, 2022**

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
